# REUBEN ROWLEY

*v.*

# JESSE HUGHES.

1. REJECTING COMPETENT EVIDENCE — *not necessarily error.* It is not error to reject evidence, though it be strictly admissible, if it appears from other evidence in the record that its admission would not have changed the result.

2. EVIDENCE — *acts and declarations of a party — when admissible as a part of the res gestœ.* In the action of forcible entry and detainer the question is one of possession, and the intention with which the claimant, under whom the defendant holds, entered into possession after its abandonment by the plaintiff, is a proper subject of inquiry; and such intention may be shown by his own acts and declarations made at the time of taking possession, as a part of the *res gestœ.*

3. PRACTICE — *allowing further proof by a party after he has rested his case — discretionary.* It is discretionary with a court to allow a party to introduce further evidence in chief after he has rested his case.

WRIT OF ERROR to the Circuit Court of Mercer county; the Hon. M. WILLIAMSON, Judge, presiding.

The opinion of the Court contains a statement of the case.

Messrs. JOHNSON & HOPKINS, for the plaintiff in error.

Mr. L. DOUGLASS, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of forcible entry and detainer to recover possession of the N. ½ of section 9, in town 14 N. range, 3 West. The action was brought before a justice of the peace in Mercer county, by Reuben Rowley against Jesse Hughes, wherein Rowley recovered a judgment. On appeal to the Circuit Court this judgment was reversed, and a judgment entered in favor of Hughes.

To reverse this judgment, Rowley has sued out this writ of error, and assigns several errors. The principal points made

by plaintiff in error are, that the verdict should have been set aside and a new trial awarded; the verdict being against the law and the evidence.

The facts are, briefly, that Rowley, by his agent Bassett, in the fall of 1860, caused the land to be surveyed, and about four acres of it about the center, measuring from east to west, and on the south side of the land so as to include portions of both quarter sections, to be broke, and he partly inclosed this with seven or eight panels of fence the same fall; in the following spring, he put up some more fence, leaving about half the east side, and all the west side uninclosed. This fence consisted of two boards to the panel, and cost about forty dollars. Plaintiff's agent informed him in the spring of 1861, that the money he had furnished was not sufficient to inclose the ground that was broke, and he replied that he would improve thirty acres the next season, in 1862, and then in 1862, wrote his agent that rents did not pay, and as the financial condition of the country was unsettled, he would postpone any further improvements. All the boards were gone from the fence by the spring or summer of 1863, and in that fall, the posts were removed, and defendant had broke three or four acres near the west side of the west quarter. When this was communicated to the plaintiff he directed his agent to have a house built on the land and to procure materials and fence it. On the second of March, 1864, the building was erected, and by the eleventh it was entirely inclosed, floors laid, windows and doors in, and a lock on the door. The carpenter left the house with his chest of tools in it, in the evening and locked the door. There were in the building, nails, lath and lime to plaster it, and brick for a flue. When he returned to the house on the morning of the fourteenth of March, he found the defendant with his family in it, who admitted he entered by forcing or breaking open the door, he also admitted that a plasterer had been employed to plaster the house, and went there for that purpose on the fourteenth of March. The plaintiff also produced a deed from Nevins and Alstyne to him, dated June 1, 1847, for the northwest quarter of the land in controversy, being a quitclaim for

the consideration of one dollar.   He also offered in evidence a
contract of purchase of the entire half section made by one
Kingsley to him, dated June 2, 1860, to show the extent of his
possession.    This was acknowledged August 3, 1864, but
rejected by the court.   He then produced a deed from Kingsley
to himself, dated June 3, 1863, for the whole tract.

The defendant, to show the extent of his claim, produced a
deed from John Caldwell to N. P. Brown, dated August 26,
1863, for the premises in controversy, and a deed from Brown
to Mary A. Wetmore, dated in the preceding June, for the
undivided half of the premises.   The last of September or first
of October, 1863, Brown employed L. S. Moore to break
eighty acres of this land, but the ground was so dry and hard,
he could break only about five acres on the west quarter, and
a fourth of an acre on the east quarter; about the time this
breaking was done, he saw the breaking done in 1860.   It had
grown up to weeds and grass so that it could only be distin-
guished by careful examination,—the furrow marks were obliter-
ated.   Moore was employed by Brown and Wetmore, to move
Hughes and his family into the house on the land; only
seventy-three posts remained standing on the land, and some
of them in an inclined position.

From the spring of 1861 to the fall of 1863, this land was
not in the actual possession of any one.   The question of aban-
donment by plaintiff in error, was for the jury to determine.
The action was not brought to recover possession of the house
plaintiff had erected on the land, but it was to recover posses-
sion of one-half section of land.   Plaintiff had abandoned the
possession he had taken in 1860, as the jury have found, and
as the proof shows, before Brown, the landlord of defendant,
entered and commenced breaking.   This entering and break-
ing by Brown, gave him possession, on which plaintiff entered
in 1864, and built the house out of which defendant forcibly
expelled plaintiff in the manner stated.   Now, if the action
was brought for the possession of the house, it is probable the
plaintiff could recover, but as it is brought for possession of the
land, it is well proved that he entered on Brown's possession,

and not Brown upon his. Building the house in 1864, was an entry upon Brown's possession, as before that time Brown had exercised acts of ownership over it, and had taken possession of it, and had it in his possession when the house was built.

The verdict then was not contrary to the evidence, and should not have been set aside.

Excluding the contract of sale of the land between Kingsley and the plaintiff was not erroneous.

If the contract was offered merely to show the extent of plaintiff's claim its rejection could not have damaged the plaintiff, as the proof showed he had abandoned the improvements made on the land. Had this contract been admitted, it could not, in our judgment, have changed the result. The question of abandonment was squarely before the jury, and they have passed upon it.

The fact that Moore was permitted to testify that Brown, the claimant, had made a contract with him to break eighty acres on each quarter of this land was not improper. The question was one of possession merely, and the intention with which Brown took possession was a proper subject of inquiry,· to be established by his own declarations and acts. These acts and declarations made at the time of taking possession are a part of the *res gestœ,* and were admissible.

The objection that Brown was allowed to testify, is answered by the fact that he had released all his interest in the land to Wetmore, and his place as surety on the appeal bond was supplied by another party, and the defendant released him from his bond of indemnity, so that he became a competent witness.

As to the exclusion of Moreland's testimony, it was evidence which the defendant should have produced in the first instance to show the extent and character of his possession and improvements and that they were open, visible and notorious. It was discretionary with the court, to allow the evidence after the defendant had rested. It was not rebutting evidence, but evidence which the plaintiff should have produced in the first instance.

As to the instructions given by the court on behalf of the defendant, they seem to embrace the doctrine of the case of *Brooks* v. *Bruyn*, 18 Ill. 543, and that of the later case of *Dean* v. *Comstock*, 32 id. 173. We perceive no error in the instructions given for defendant, and no error in the record, and therefore affirm the judgment.

*Judgment affirmed.*